**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

NORMA LAUDER,                    )
                                 )
                    Plaintiff,   )
                                 )
          v.                     )          1:14CV00983
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social    )
Security,                        )
                                 )
                    Defendant.   )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Norma Lauder, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")) and both parties have moved for judgment (Docket Entries 7, 11; see also Docket Entries 9 (Plaintiff's Brief), 12 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of July 12, 2010. (Tr. 50-51, 181-82.) Upon denial of that application initially (Tr. 84-97, 114-17) and on reconsideration (Tr. 98-113, 122-29), Plaintiff requested a hearing de novo before

an Administrative Law Judge ("ALJ") (Tr. 130-31). Plaintiff and her attorney attended the hearing (Tr. 52-83) and, post-hearing, a vocational expert ("VE") provided testimony via written responses to the ALJ's and Plaintiff's interrogatories (Tr. 313-16, 324). The ALJ subsequently ruled that Plaintiff met the requirements for disability under the Act from her onset date of July 12, 2010, through June 25, 2012, but did not thereafter qualify as disabled under the Act due to medical improvement. (Tr. 21-39.) The Appeals Council denied Plaintiff's request for review (Tr. 1-10), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2014.

2.    [Plaintiff] has not engaged in substantial gainful activity since July 12, 2010, the date [Plaintiff] became disabled.

3.    From July 12, 2010 through June 25, 2012, the period during which [Plaintiff] was under a disability, [Plaintiff] had the following severe impairments: seizure disorder due to left temporal impairment causing neurological dysfunction and cognitive impairment, chronic fatigue syndrome, fibromyalgia, and psychological impairments including depression, anxiety, and post-traumatic stress disorder (PTSD).

. . .

4.    From July 12, 2010 through June 25, 2012, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of

2

an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   [F]rom July 12, 2010 through June 25, 2012, [Plaintiff] had the residual functional capacity to perform sedentary work . . . involving simple, routine, repetitive tasks in a nonproduction environment but not on a regular and consistent, full-time basis.

. . .

6.   From July 12, 2010 through June 25, 2012, [Plaintiff] was unable to perform any past relevant work.

. . .

10.  From July 12, 2010 through June 25, 2012, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that [she] could have performed.

. . .

11.  [Plaintiff] was under a disability, as defined by the [] Act, from July 12, 2010, through June 25, 2012.

12.  [Plaintiff] has not developed any new impairment or impairments since June 26, 2012, the date [her] disability ended.  Thus, [Plaintiff's] current severe impairments are the same as that present from July 12, 2010 through June 25, 2012.

13.  Beginning June 26, 2012, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

14.  Medical improvement occurred as of June 26, 2012, the date [Plaintiff's] disability ended.

. . .

3

15.  The medical improvement that has occurred is related to the ability to work because there has been an increase in [Plaintiff's] residual functional capacity.

. . .

16.  [B]eginning June 26, 2012, [Plaintiff] has the residual functional capacity to perform sedentary work . . . where she can avoid exposure to hazards such as dangerous machinery and unprotected heights. [Plaintiff] is able to perform simple, routine, repetitive tasks in a nonproduction environment.

. . .

17.  [Plaintiff] is still unable to perform past relevant work.

. . .

21.  Beginning June 26, 2012, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

22.  [Plaintiff's] disability ended June 25, 2012.

(Tr. 28-38 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

4

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence

5

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age,

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of
(continued...)

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ failed to resolve a conflict between the VE's testimony and the <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>") (Docket Entry 9 at 6-10); and

2) new and material evidence submitted to the Appeals Council requires remand (<u>id.</u> at 10-16).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 12 at 6-16.)

## 1.  Conflict between VE and <u>DOT</u>

In Plaintiff's first issue on review, he asserts that the ALJ erred by failing to resolve a conflict between the VE's testimony and the <u>DOT</u> in violation of Social Security Ruling 00-4p, <u>Policy Interpretation Ruling Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p").  (Docket Entry 9 at 6-10.)  Specifically, Plaintiff disputes the VE's (and ALJ's) conclusion that Plaintiff retained the RFC to perform the jobs of order clerk, charge account clerk,

---

[4] (...continued)
the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

and surveillance system monitor (id. at 7 (citing Tr. 38, 315)),[5] because the DOT rates all three jobs at a reasoning level of three (id. at 7-8 (citing G.P.O., DOT, No. 209.567-014 (order clerk, food and beverage), 1991 WL 671794, DOT, No. 205.367-014 (charge-account clerk), 1991 WL 671715, and DOT, No. 379.367-010 (surveillance-system monitor), 1991 WL 673244)),[6] which exceeds "the ALJ's limitation to 'simple, routine, repetitive tasks'" (id. at 7 (citing Tr. 36)).  According to Plaintiff, "[a]lthough there is a conflict among the circuits regarding this [issue], recent cases from this Court have come down on the side of a reasoning level of [three] being [incompatible] with simple, routine, repetitive tasks." (Id. (citing Weaver v. Colvin, No. 1:10-cv-582, 2013 WL 3989561, at *12 (M.D.N.C. Aug. 2, 2013) (unpublished), recommendation adopted, 2013 WL 4768178 (M.D.N.C. Sept. 5, 2013) (unpublished), and Mullis v. Colvin, No. 1:11-cv-22, 2014 WL 575722, at *10 (M.D.N.C. Feb. 11, 2014) (unpublished), recommendation adopted, 2014 WL 2257188 (M.D.N.C. May 29, 2014) (unpublished)).  Plaintiff's contentions do not warrant relief.

---

[5] Although Plaintiff asserts that the ALJ adopted the VE's testimony only as to the order clerk and surveillance system monitor jobs (see Docket Entry 9 at 7-8), the ALJ's decision makes clear that he adopted all three of the jobs proffered by the VE (see Tr. 38).

[6] A reasoning level of three requires an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations."  DOT, App'x C, Components of the Definition Trailer, 1991 WL 688702.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). An ALJ discharges his duty under SSR 00-4p by "inquir[ing] on the record whether the [VE's] testimony [is] consistent with the DOT" and "elicit[ing] a reasonable explanation for" any conflicts identified by the VE. Fisher v. Barnhart, 181 F. App'x 359, 366 (4th Cir. 2006). In general, if the VE denies the existence of any conflicts, the ALJ's obligations under SSR 00-4p come to an end. See Martin v. Commissioner of Soc. Sec., 170 F. App'x 369, 374-75 (6th Cir. 2006); see also Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (holding that "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct").

Here, following the hearing, the ALJ propounded interrogatories to the VE, and inquired as to whether an individual with Plaintiff's age, education, work experience, and RFC could

11

perform any jobs existing in significant numbers in the national economy. (See Tr. 313-16.) In response, the VE opined that such an individual would remain capable of performing the jobs of order clerk, charge account clerk, and surveillance system monitor, and provided the corresponding DOT codes for those jobs, as well as the Specific Vocational Preparation time for each job (level 2), and the jobs' incidence in the national economy. (See Tr. 315.)[7] Significantly, the ALJ asked the VE if any conflicts existed "between the occupational evidence [she] provided . . . and the occupational information contained in the [DOT] and/or [its companion publication, Selected Characteristics of Occupations ('SCO')]," to which the VE responded, "No." (Tr. 316.)

The ALJ mailed the VE's responses to the interrogatories to Plaintiff's counsel in a letter (see Tr. 318-19), which outlined the actions Plaintiff had a right to take:

> You may submit any or all of the following: written comments concerning the enclosed evidence, a written statement as to the facts and law you believe apply to the case in light of that evidence, and any additional records you wish me to consider (including a report from the treating physician). You may also submit written questions to be sent to the author(s) of the enclosed report(s).
>
> You may also request a supplemental hearing at which you would have the opportunity to appear, testify, produce

---

[7] The DOT defines "Specific Vocational Preparation" ("SVP") as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App'x C, 1991 WL 688702. An SVP of two corresponds to a learning time of "[a]nything beyond a short demonstration up to and including [one] month." Id.

Case 1:14-cv-00983-WO-LPA   Document 14   Filed 03/09/16   Page 12 of 24

> witnesses, and submit additional evidence and written or
> oral statements concerning the facts and law. . . . In
> addition, you may request an opportunity to question
> witnesses, including the author(s) of the enclosed
> report(s).

(Tr. 318.) Plaintiff's counsel initially responded to that letter by requesting a supplemental hearing (see Tr. 317), but subsequently, after conferring with the ALJ, withdrew that request, and sent the VE an additional interrogatory in writing:

> Please assume a hypothetical person who is a younger
> individual, aged 18-44, who has a high school education.
> This person can do sedentary work, but is limited to
> simple, routine, repetitive tasks. She must avoid all
> exposure to hazards such as unprotected heights, moving
> machinery, and sharp objects. From a mental standpoint,
> she is capable of following work rules for 30% of an[] 8-
> hour day; she can relate to co-workers for 40% of an 8-
> hour day; she can deal with the general public for 20% of
> an 8-hour day[;] and can only occasionally maintain
> concentration, pace, and persistence.
>
> . . .
>
>     (b)  Could such an individual perform any work that
>          exists in the local and national economy?

(Tr. 321-22 (internal citation omitted).) The VE responded in writing, and opined that, given the limitations in Plaintiff's hypothetical, no work existed that such a person could perform. (See Tr. 324.)

The ALJ once again advised Plaintiff's counsel in writing that the ALJ proposed to enter the VE's response to Plaintiff's hypothetical into the record and detailed the actions Plaintiff had the right to take, including submitting written comments, propounding further written questions to the VE, and requesting an

13

opportunity to question the VE at a supplemental hearing. (See Tr. 325-26.) Plaintiff's counsel responded: "At this time, there is no further evidence to submit in this claim and I look forward to receiving your written decision in due course." (Tr. 336.)

Shortly thereafter, the ALJ issued a decision finding Plaintiff not disabled after June 25, 2012 (see Tr. 21-39), which adopted the VE's written response to the ALJ's interrogatories:

> To determine the extent of erosion of the unskilled sedentary occupational base caused by [the RFC's] limitations, the [ALJ] asked the [VE] via interrogatories whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC] as of June 19 [sic], 2012. The [VE] indicated that given all of these factors the individual would be able to perform the requirements of representative sedentary, unskilled occupations such as order clerk (19,000 nationally); charge account clerk (16,000 nationally); and surveillance system[] monitor (16,000 nationally). <u>Pursuant to SSR 00-4p, the [ALJ] has determined that the [VE's] testimony is consistent with the information contained in the [DOT].</u>

(Tr. 38 (emphasis added).) The ALJ then discussed the VE's opinion in response to Plaintiff's hypothetical that no work existed that Plaintiff could perform, but noted that Plaintiff's treating psychologist, Dr. Patricia Hill, supplied the additional mental limitations in Plaintiff's hypothetical, and that "the evidence as a whole" did not "fully support[]" Dr. Hill's opinions (as the ALJ had earlier discussed (see Tr. 36-37)). (Tr. 38.)

As detailed above, the ALJ fully discharged his duty under SSR 00-4p. He inquired of the VE whether any conflicts existed between her occupational evidence and the information contained in the <u>DOT</u>

14

(and <u>SCO</u>) (<u>see</u> Tr. 315), and the VE unequivocally stated that no such conflict existed (<u>see</u> Tr. 316). Plaintiff's counsel, despite having over two weeks to evaluate the VE's written responses to the ALJ's hypothetical (<u>see</u> Tr. 318, 321), as well as another opportunity to address the VE following her response to Plaintiff's hypothetical (<u>see</u> Tr. 325, 336), did not raise the issue of an alleged conflict between the proffered jobs' reasoning level of three and the RFC's limitation to simple, routine, repetitive tasks (<u>see</u> Tr. 317, 321, 336). After neither Plaintiff nor the VE identified a possible <u>DOT</u> conflict, the ALJ expressly adopted the VE's testimony that Plaintiff could perform the three jobs in question, as well as the VE's opinion that no <u>DOT</u> conflict existed. (<u>See</u> Tr. 38.) Under these circumstances, Plaintiff has established no basis for remand.

Plaintiff nonetheless argues that the ALJ erred by not resolving the "apparent" conflict between the VE's jobs' reasoning level and the RFC, despite the VE's contrary testimony that no conflict existed and Plaintiff's failure to identify any such conflict before the ALJ. (Docket Entry 9 at 9.) Because Plaintiff did not raise any such conflict on cross-examination of the VE, "she would have to show that the conflict was 'obvious enough that the ALJ should have picked up on [it] without any assistance.'" <u>Terry</u>, 508 F.3d at 478 (citing <u>Overman v. Astrue</u>, 546 F.3d 456, 462-63 (7th Cir. 2008)). Moreover, as discussed above, SSR 00-4p

did not, under the circumstances of this case, compel the ALJ to take further steps, the Fourth Circuit has not yet addressed the alleged conflict now cited by Plaintiff, see Weaver, 2013 WL 3989561, at *11, and (as Plaintiff concedes (see Docket Entry 9 at 8)), other federal appellate courts that have considered the matter have issued conflicting opinions, see Weaver, 2013 WL 3989561, at *11 & n.13 (collecting cases).[8]

In the face of the foregoing considerations (all of which weigh against finding any error by the ALJ in this instance), Plaintiff insists that the Court should overturn the denial of benefits because two "recent cases from this Court have come down on the side of a reasoning level [three] being [incompatible] with simple, routine, repetitive tasks." (Docket Entry 9 at 8 (citing Weaver, 2013 WL 3989561, at *12, and Mullis, 2014 WL 575722, at *10-11).) At least one material fact, common to both Weaver and Mullis, distinguishes those cases from this one. In both of those cases, the ALJ neglected to ask the VE whether his or her opinion conflicted with the DOT, but still included a finding in the decision that the VE's testimony harmonized with the DOT. See Weaver, 2013 WL 3989561, at *12; Mullis, 2014 WL 575722, at *11.

---

[8] District courts within the Fourth Circuit also have persuasively demonstrated that a reasoning level of three does not present an "apparent conflict" with an RFC limitation to simple, routine, repetitive tasks. See, e.g., Bentley v. Commissioner of Soc. Sec., No. 1:13CV163, 2014 WL 906587, at *14-16 (N.D.W. Va. Mar. 7, 2014) (unpublished); Thacker v. Astrue, Civil No. 3:11CV246-GCM-DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) (unpublished), recommendation adopted, 2012 WL 380052 (W.D.N.C. Feb. 6, 2012) (unpublished).

Thus, in both Weaver and Mullis, the Court concluded that the ALJ clearly violated SSR 00-4p by failing to ask the VE whether a conflict with the DOT existed, and that "[t]here appear[ed] to be no factual basis" for the ALJ's finding of no conflict. Id. In contrast, the ALJ here, as discussed above, fully complied with the requirements of SSR 00-4p.

Given that circumstance, the failure of Plaintiff's counsel to raise the issue of any alleged DOT conflict before the ALJ, despite having more than two weeks to develop a cross-examination of the VE, amounts to a waiver of the right to raise the argument before this Court. See Coleman v. Colvin, Civ. No. 0:14-2697-RBH, 2015 WL 5474674, at *19 (D.S.C. Sept. 16, 2015) (unpublished) ("[T]he court is unpersuaded by [the plaintiff's] attempts to now challenge the [VE's] testimony and the ALJ's findings and point out possible conflicts when none was raised during the proceeding."); Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (unpublished) (finding waiver of issue on judicial review where the plaintiff "failed to mount any opposition . . . to the view that he retained the capacity to do the [jobs proffered by the VE], despite . . . the opportunity . . . to question the VE about . . . those positions"), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014); Stepinski v. Astrue, No. CA 11-183 ML, 2012 WL 3866678, at *9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("The [c]ourt views unfavorably the silence of [the] [p]laintiff's counsel at the

hearing regarding the omission about which he now complains. Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive. Accordingly, the [c]ourt finds that [the] [p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)), recommendation adopted, 2012 WL 3863812 (D.R.I. Sept. 5, 2012) (unpublished); Young v. United States Comm'r of Soc. Sec., No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) (unpublished) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the [DOT], and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.")

In sum, Plaintiff's first issue on review fails to entitle her to relief.

**2.    New and Material Evidence**

In Plaintiff's second and final assignment of error, she alleges that she submitted "new and material evidence" to the Appeals Council (Docket Entry 9 at 10), which "might have affected the [ALJ's] decision," and thus warrants remand under Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011) (Docket Entry 9 at 11). In particular, Plaintiff contends that a January 29, 2014 statement

18

from her treating neurologist, Dr. Craig DuBois, that Plaintiff "has been . . . disabled since she ceased working in July 2009 [sic] and that she will remain so indefinitely into the future" (Tr. 10),[9] along with four treatment records from Dr. DuBois dating from December 11, 2012, to October 9, 2013 (Tr. 799-802), qualify as new, material evidence (see Docket Entry 9 at 13). According to Plaintiff, this evidence conflicts with the ALJ's conclusion that Dr. DuBois "ha[d] not evaluated [Plaintiff] since June 12, 2012" and that Dr. DuBois's "last report from June 2012 indicate[d] that [Plaintiff] was doing very well and had not had a seizure in over three months." (Id. (citing Tr. 37).) Plaintiff maintains that the new evidence "converts the [ALJ's] 'doing very well' comment from a final conclusion to an isolated and exceptional comment, which, under the legally binding law of our circuit, cannot be the basis of a denial of benfeits." (Id. (citing Kellough v. Heckler, 785 F.2d 1147, 1153 (4th Cir. 1986)).) Further, Plaintiff challenges the Appeals Council's conclusion that the new evidence did not relate to the period on or before the date of the ALJ's decision (see Tr. 2), because "'an ALJ must give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be reflective of a possible earlier and progressive degeneration'" (Docket Entry 9 at 14

---

[9] Plaintiff testified that she stopped working because of her disability in July 2010, rather than July 2009. (See Tr. 59.)

(citing <u>Bird v. Commissioner of Soc. Sec. Admin.</u>, 699 F.3d 337, 345 (4th Cir. 2012))). Plaintiff's contentions do not warrant relief.

"[T]he Appeals Council is required to consider new and material evidence relating to the period on or before the date of the ALJ decision in deciding whether to grant review." <u>Wilkins v. Secretary, Dep't of Health & Human Servs.</u>, 953 F.2d 93, 95 (4th Cir. 1991). "Evidence is new within the meaning of [the Commissioner's regulations] if it is not duplicative or cumulative." <u>Id.</u> at 95-96; <u>see generally</u> Associate Comm'r of Hearings and Appeals, Soc. Sec. Admin., Pub. No. 70-074, Hearings, Appeals, Litig., and Law (LEX) Manual, § I-3-306(A) (1990). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." <u>Wilkins</u>, 953 F.2d at 96 (citing <u>Borders v. Heckler</u>, 777 F.2d 954, 956 (4th Cir. 1985)).

Here, the Appeals Council considered Plaintiff's new evidence and incorporated it into the record (<u>see</u> Tr. 1, 2, 5, 7-10, 799-802), but concluded that the new treatment records from Dr. DuBois did "not provide a basis for changing the [ALJ's] decision," and that Dr. DuBois's January 29, 2014 statement related to "a later time" than September 11, 2013, the date of the ALJ's decision, and "[t]herefore . . . d[id] not affect the decision about whether you were disabled beginning on or before September 11, 2013" (Tr. 2).

The Appeals Council mistakenly concluded that Dr. DuBois's statement did not relate to the time period relevant to the ALJ's

decision. Dr. DuBois treated Plaintiff on 16 occasions between August 3, 2010 (less than one month after Plaintiff's alleged onset date of disability) to October 9, 2013 (nearly one month after the ALJ's decision). (See Tr. 455-64, 531-34, 566-67, 588-92, 730-36, 799-802.) In his January 29, 2014 statement, Dr. DuBois detailed Plaintiff's diagnoses, symptoms, treatments, side effects from treatment, and the impact of those symptoms and side effects, which Dr. DuBois clearly based on those years of office visits predating the ALJ's decision. (See Tr. 7-9.) Moreover, Dr. DuBois's opinion that Plaintiff had qualified as disabled since she stopped working in July 2010 unquestionably relates to the time period prior to the ALJ's decision on September 11, 2013. (See Tr. 10.) Dr. DuBois's instant statement thus did relate to the period on or before the date of the ALJ's decision. (See Tr. 2.)

However, that error by the Appeals Council qualifies as harmless under the circumstances of this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Even assuming, arguendo, that the evidence in question qualifies as "new,"[10] it lacks materiality (i.e., it presents no

_____

[10] Dr. DuBois's instant statement arguably could qualify as "duplicative" or "cumulative" (and therefore not "new"), see Wilkins, 953 F.2d at 95-96, because he previously submitted a statement, which outlined (in more summary fashion) the
(continued...)

reasonable possibility of a different outcome, <u>Wilkins</u>, 953 F.2d at 95).

As an initial matter, Dr. DuBois's opinion that Plaintiff qualified as disabled (<u>see</u> Tr. 10) constitutes a matter reserved to the Commissioner and thus warranted no special significance, <u>see</u> 20 C.F.R. § 404.1527(e). Further, the new treatment records from Dr. DuBois continue to show that Plaintiff was "doing well" (<u>see</u> Tr. 799, 800), that she experienced fewer seizures (<u>see</u> Tr. 799, 800, 801), that she tolerated her medications well (<u>see</u> Tr. 800), and that she had decided to pursue reinstatement of her driving privileges (<u>see</u> Tr. 799, 800, 802), consistent with the ALJ's findings that Plaintiff experienced medical improvement affecting her ability to work after June 25, 2012 (<u>see</u> Tr. 35).[11] Moreover, despite Plaintiff's characterization of the new evidence as "material" (Docket Entry 9 at 13), she makes no attempt to show how that evidence reasonably could alter the ALJ's determinations (<u>see</u>

---

[10] (...continued)
same information (<u>compare</u> Tr. 7-10, <u>with</u> Tr. 795) and similarly concluded that Plaintiff had suffered from a disability "for a very long time" and could not ever "work in any capacity" (Tr. 795). The ALJ credited Dr. DuBois's earlier opinion, but only as to Plaintiff's closed period of disability ending on June 25, 2012. (<u>See</u> Tr. 32.)

[11] Plaintiff's reliance on <u>Kellough</u>, 785 F.2d at 1153, misses the mark. (Docket Entry 9 at 13.) That decision merely counsels that a physician's notation that a patient "'feels well' . . . <u>must be read in context</u>." <u>Kellough</u>, 785 F.2d at 1153 (emphasis added). In <u>Kellough</u>, the physician's comment that the plaintiff "feels well" occurred just one month before she underwent open heart surgery. <u>Id.</u> Here, however, Dr. DuBois's observations that Plaintiff was "doing well" and "doing extremely well" (<u>see</u> Tr. 799, 800) occurred in the context of fewer seizures, good toleration of her medications, and her decision to seek reinstatement of driving privileges (<u>see</u> Tr. 799-802). Thus, <u>Kellough</u> presents no barrier to the ALJ's consideration of those observations.

22

id. at 10-16). Notably, Plaintiff neither argues that the evidence establishes that she meets or medically equals any of the Commissioner's listings nor explains how the evidence should alter the RFC (let alone how such alteration would impact her ability to perform the jobs cited by the VE). (Id.)

Finally, Meyer does not provide a basis for remand. In that case, the ALJ had commented on the absence of any restrictions from a treating physician. Meyer, 662 F.3d at 703. Thus, when the plaintiff submitted new evidence to the Appeals Council containing restrictions from his treating physician, the Fourth Circuit noted:

> On consideration of the record as a whole, we simply cannot determine whether substantial evidence supports the ALJ's denial of benefits here. The ALJ emphasized that the record before it lacked "restrictions placed on the claimant by a treating physician," suggesting that this evidentiary gap played a role in its decision. Meyer subsequently obtained this missing evidence from his treating physician. That evidence corroborates the opinion of Dr. Weissglass, which the ALJ had rejected. But other record evidence credited by the ALJ conflicts with the new evidence. The Appeals Council made the new evidence part of the record but summarily denied review of the ALJ decision. Thus, no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance. Therefore, we must remand the case for further fact finding.

Id. at 707 (emphasis added). In contrast, no such evidentiary gap existed in this case: Dr. DuBois had already submitted an opinion that Plaintiff qualified as disabled (see Tr. 795), which the ALJ had credited only as to the closed period of disability ending on

June 25, 2012 (see Tr. 32). Thus, a "fact finder has [already] made . . . findings as to the treating physician's opinion [and] . . . reconcile[d] that evidence with the conflicting and supporting evidence in the record." Meyer, 662 F.3d at 707.

In conclusion, Plaintiff's second assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 7) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 9, 2016